Filed 1/28/21  City of Gardena v. State Water Resources Control Bd. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF GARDENA, | |
| Plaintiff and Respondent, | G058540 |
| v. | (Super. Ct. No. 30-2016-00833722) |
| STATE WATER RESOURCES CONTROL BOARD et al., | O P I N I O N |
| Defendants and Appellants; | |
| CITY OF WEST COVINA et al., | |
| Real Parties in Interest and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Glenda Sanders, Judge.  Reversed and remanded with directions.  Appellants' request for judicial notice.  Denied.  Respondent's motion to augment.  Denied.

Xavier Becerra, Attorney General, Robert W. Byrne, Assistant Attorney General, Gary E. Tavetian, Daniel M. Lucas and Jennifer Kalnins Temple, Deputy Attorneys General, for Defendants and Appellants.

Casso & Sparks, John J. Harris; Locke Lord and Susan A. Kidwell for Plaintiff and Respondent.

Jones & Mayer and Bruce A. Lindsay for Real Parties in Interest and Respondents City of West Covina, City of Santa Fe Springs, City of Lakewood, and City of Claremont.

Aleshire & Wynder and Christine M. Carson for Real Parties in Interest and Respondents City of Lawndale, City of Signal Hill, City of Rancho Palos Verdes, and City of Glendora.

George S. Cardona, Interim City Attorney, and Susan Y. Cola, Deputy City Attorney, for Real Party in Interest and Respondent City of Santa Monica.

\*　　\*　　\*

INTRODUCTION

The facts and issues in this case are identical to those in *City of Duarte v. State Water Resources Control Board et al.* (Jan. __, 2021, G058539) __ Cal.App.5th __ (*Duarte*).  The cases were tried together, and the trial court issued a single amended decision for both cases.  Based on the analysis and conclusions we reached in *Duarte*, we reverse the judgment and direct the trial court to deny the petition for writ of mandate and enter judgment in favor of Appellants the State Water Resources Control Board and the Regional Water Quality Control Board, Los Angeles Region.

BACKGROUND

At issue in this case is a National Pollutant Discharge Elimination System (NPDES) permit (the Permit) that sets numeric effluent limitations on the municipal separate storm sewer systems (MS4s) operated by 86 municipal entities in Los Angeles County (the Permittees).

2

The appellants in this case are the Regional Water Quality Control Board, Los Angeles Region (Regional Board), which issued the Permit, and the State Water Resources Control Board (State Board), which approved the Permit with modifications. We shall refer to the State Board and the Regional Board together as the Water Control Boards.

The City of Gardena (Gardena) is the respondent.

The Cities of West Covina, Santa Fe Springs, Lakewood, and Claremont are real parties in interest that jointly filed a respondents' brief, to which the Water Control Boards replied.

The Cities of Lawndale, Signal Hill, Rancho Palos Verdes, Glendora, and Santa Monica are real parties in interest that filed briefs joining in the arguments advanced by Gardena and by the other group of real parties in interest, but did not file their own respondents' briefs.

PROCEDURAL HISTORY

In July 2015, Gardena filed a petition for writ of mandate and complaint for injunctive and declaratory relief in the Los Angeles County Superior Court. Gardena alleged that the Water Control Boards failed to proceed as required by law and abused their discretion in imposing the numeric effluent limitations in the Permit. The City of Duarte (Duarte) filed a similar petition that same month; the cases were deemed to be related, but were not ordered consolidated. In December 2015, pursuant to Water Code section 13361, subdivision (b), the related cases were transferred to the Orange County Superior Court.

The trial court conducted a joint trial on Duarte's and Gardena's petitions on multiple days between November 2017 and April 2018, and conducted further hearings on the related matters in July and August 2018.

In April 2019, the trial court issued a detailed amended ruling granting the petitions for writ of mandate. The trial court found (1) the Permit's numeric effluent

3

limitations were more stringent than what is required by federal law; and (2) the Water Control Boards failed to comply with Water Code section 13241 in adopting the numeric effluent limitations.

In September 2019, the trial court issued a writ of mandate and a judgment in favor of Gardena, both of which ordered the Water Control Boards to "[s]et aside each and every one of the provisions in the Permit pertaining in any way to any and all Numeric Effluent Limits, and to reconsider the Permit."

The Water Control Boards filed a timely notice of appeal.

DISCUSSION

All parties agree that the issue in this case is two-fold: (1) Do the numeric effluent limitations in the Permit require more than is required under federal law? (2) If so, did the Water Control Boards sufficiently consider the economic considerations factor required by Water Code section 13241 before issuing the Permit?[1]

As in *Duarte, supra,* __ Cal.App.5th __ [slip op., pp. 9-12], we shall assume without deciding that the Permit's requirement of numeric effluent limitations was more stringent than federal law required. This determination takes us to the second issue presented by this appeal: Whether the Water Control Boards sufficiently considered the necessary factors under Water Code section 13241.

Assuming the Permit's numeric effluent limitations were more stringent than federal law required, the Water Control Boards were required to consider the factors set forth in Water Code section 13241. The trial court found, and Gardena argues on appeal, that the Water Control Boards failed to sufficiently consider section 13241, subdivision (d)—economic considerations. Having reviewed the findings in the Permit,

---

[1] As discussed in greater detail in *Duarte, supra,* ___ Cal.App.5th ___ [slip. op., pp. 7-8, fn. 2], we deny the Water Control Boards' request for judicial notice of Exhibits 1 through 27, filed on May 14, 2020. Those exhibits, which were not a part of the administrative record, and were not presented to the trial court, are summaries of material that is included in the administrative record and therefore would be duplicative.

4

as well as the support for those findings in the appellate record and the administrative record, we conclude that the Water Control Boards gave sufficient consideration to the economic effects of the terms imposed by the Permit.

In this case, we review the trial court's factual findings under the substantial evidence standard and its legal conclusions under the de novo standard. (*Barclay Hollander Corp. v. California Regional Water Quality Control Bd.* (2019) 38 Cal.App.5th 479, 498 (*Barclay*).) We are not bound by legal conclusions made by the state, regional agencies, or the trial court; however, we must "'give appropriate consideration to an administrative agency's expertise underlying its interpretation of an applicable statute.'" (*Ibid.*)

The trial court found that the Permit did not comply with Water Code section 13241 because it "does not, at any point, include any reference to or estimate of the possible cost or range of costs of compliance with numeric [water quality-based effluent limitations]."

In *Duarte, supra,* __ Cal.App.5th __ [slip op., p. 15], we concluded: "[T]he Water Control Boards sufficiently complied with their obligations to consider the Water Code section 13241 factors. The Regional Board developed an economic analysis of the Permit's requirements, consistent with Water Code section 13241." In that opinion, we explained in detail that the Water Control Boards, among other things, (1) acknowledged that the costs of complying with the Permit would be "above and beyond" the costs of complying with the existing permits; (2) explained that the cost of regulating MS4 discharges would be "highly variable among the Permittees," in part because the Permit allowed the Permittees flexibility in how they would comply with it; (3) determined the potential costs to Permittees by using their self-reported data; (4) calculated per household compliance costs; (5) considered the economic benefits of imposing numeric effluent limitations, as well as the impacts on health and financial well-being if MS4 discharges were not regulated; (6) considered data on how much households were willing

5

to pay for clean water; and (7) identified potential sources of funds to cover the costs of the Permit. The record shows that the Water Control Boards explained their reasoning and acted within their discretion. (See *Barclay, supra,* 38 Cal.App.5th at pp. 497-498.)

Gardena argues that the language of Water Code section 13241 is "unambiguous" while also acknowledging that the term "economic considerations" is not defined in the statute. Gardena cites *City of Burbank v. State Water Resources Control Board* (2005) 35 Cal.4th 613, 625, which held that "[t]he plain language of [Water Code] sections 13263 and 13241 indicates the Legislature's intent in 1969, when these statutes were enacted, that a regional board consider the cost of compliance when setting effluent limitations in a wastewater discharge permit." That opinion concludes: "Thus, in this case, whether the Los Angeles Regional Board should have complied with sections 13263 and 13241 of California's Porter-Cologne Act by taking into account "*economic considerations*," *such as the costs the permit holder will incur to comply* with the numeric pollutant restrictions set out in the permits, depends on whether those restrictions meet or exceed the requirements of the federal Clean Water Act." (*Id.* at p. 627, italics added.) The case must be read, therefore, to hold that the cost of compliance is one element, but not the only one, to be considered as part of the economic considerations factor.

The real parties in interest provide specific references to the administrative record of estimated costs due to the numeric effluent limits in the Permit. A Los Angeles County Flood District analysis estimated costs would be between $17 billion and $120 billion over the course of 20 years. A University of Southern California study in 2002 estimated that "[t]he capital costs required to build new collection and treatment facilities range from $43.7 billion to treat flows from about 70% of the historic average annual storm events to $283.9 billion for 97% of the expected storm events." A 1998 Caltrans study determined that the capital costs to build storm water treatment plants would be between $33 billion and $73 billion, with annual operating costs between

$68 billion and $199 million. Real parties in interest contend that the Water Control Boards ignored this evidence and therefore did not sufficiently consider the economic considerations factor under Water Code section 13241. Given the dates of the studies and the matters they considered (i.e., newly built water treatment facilities) it is not clear that these studies were relevant to the Permit. Further, given the widely different estimates provided by these studies, it is unclear whether they would have been of any materiality or use if made a part of the economic considerations factor. The Water Control Boards acted within their discretion in determining how much weight, if any, to give to this evidence.

DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to deny the petition for writ of mandate and enter judgment in favor of Appellants. Appellants to recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

7